UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re: <br><br> JORGE H. DAROSA <br><br> Debtor. | ) <br> )    Chapter 7 <br> )    Case No. 10-44471-MSH <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF DECISION ON MOTION OF US BANK NATIONAL
ASSOCIATION FOR RELIEF FROM STAY**

On September 22, 2010, US Bank National Association filed its motion in this case seeking relief from the automatic stay provisions of § 362 of the United States Bankruptcy Code, 11 U.S.C. 101 *et seq.* in order to foreclose its mortgage on property of the debtor in Lowell, Massachusetts. The bank sought relief from stay alternatively under Bankruptcy Code § 362(d)(1) or (2). These sections require the court to grant a motion to lift the automatic stay:

> (d) On request of a party in interest and after notice and a hearing…
>
>     (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
>     (2) with respect to a stay of an act against property under subsection (a) of this section, if--
>
>         (A) the debtor does not have an equity in such property; and
>
>         (B) such property is not necessary to an effective reorganization;

Under Bankruptcy Code § 362(g), the bank bears the burden of proof on the issue of equity in the property.

The local rules of this court provide that in connection with a motion for relief from stay

1

under either § 362(d)(1) or (2), the movant shall state the fair market value and liquidation value of the collateral with any available appraisals attached. M.L.B.R. 4001-1(b)(2)(D).   In its motion the bank based its valuation of the Lowell property on the value ascribed to it by the Lowell tax assessor.

> On September 23, 2010, I entered the following order on the bank's motion for relief:
>
> Denied without prejudice for failure to provide acceptable basis of valuation as the court does not consider tax assessments acceptable basis. Costs and fees of bringing this motion may not be added to the secured obligation.

The bank moved for reconsideration of my September 23 order and I set the motion for reconsideration down for an evidentiary hearing on November 8, 2010. At the hearing, the only party in attendance was bank's counsel and the only evidence she introduced consisted of two documents: a one-page untitled document bearing the logo of the Lowell Geographic Information System containing information about the subject property and a document titled "Drive By Property Evaluation with Photos" dated July 9, 2010, which counsel indicated her client had neglected to tell her about at the time the motion for relief from stay was filed. The drive-by evaluation concluded that the property had a fair market value of $205,000. The bank is owed in excess of $360,000.

Based on the evidence of the value of the Lowell property contained in the drive-by evaluation, I granted the bank's motion for reconsideration and will vacate my September 23, 2010 order and grant the bank's motion for relief from stay. This does not, however, represent a reversal of my position that tax assessors' valuations are not an acceptable standard for establishing the value of real estate for purposes of a § 362(d) motion. I take this opportunity to clarify my reasoning.

2

Prior to the current meltdown in the residential real estate market, a bank seeking relief from stay to foreclose a mortgage would typically support its motion with a written property appraisal or opinion of value. The explosion in foreclosures has precipitated a breathtaking increase in motions for relief from stay in bankruptcy courts throughout the country. Rarely do motions for relief from stay now include appraisals or opinions of value. Instead, they rely for property valuation on the value set forth in the debtor's schedules, on a tax assessors' valuation or sometimes on an internet valuation by companies like Zillow.com. In defense of this practice, it is suggested that these alternative valuation methods are reliable and that requiring written appraisals or value opinions to accompany every motion for relief would drive up foreclosure costs that are ultimately passed on to borrowers. This latter justification rings hollow since the borrowers in question are in bankruptcy. I suspect the current phenomenon is more likely the by-product of a combination of factors, primarily the sheer magnitude of foreclosure cases and a bank's desire to move them along quickly and cheaply and the prevailing mindset of the pooled mortgage servicing industry, now in control of most foreclosures, which views the process as a failed securities transaction rather than a forced disposition of someone's home.

For purposes of satisfying its burden of proof in a motion for relief from stay, I accept a lender's unopposed allegation that a property lacks equity based on the value of that property set forth in a debtor's schedules. The scheduled value is an admission by the debtor under oath. Furthermore, the law in this and most other circuits is that an owner is considered competent to testify about the value of his own property.[1]  See Shane v. Shane, 891 F.2d 976, 982 (1st Cir.

---

[1] The determination of what weight to give such evidence is an entirely different matter.  In re Young, 390 B.R. 480, 493 (Bankr.D. Me. 2008).  So, for example, while the scheduled value can

3

1989); Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 10 Fed. R. Evid. Serv. 1333 (1st Cir. 1982), cert. denied, 459 U.S. 1105, 103 S. Ct. 728, 74 L.Ed.2d 953, 1204, and 103 S. Ct. 1191, 75 L.Ed.2d 436 (1983). See also U.S. v. 10,031.98 Acres of Land, More or Less, Situate in Las Animas County, Colo., 850 F.2d 634, 636 (10th Cir. 1988); New Haven Radio, Inc. v. Meister (In re Martin-Trigona), 760 F.2d 1334, 1344 (2d Cir. 1985); Justice v. Pennzoil Co., 598 F.2d 1339, 1344 (4th Cir. 1979); Kestenbaum v. Falstaff Brewing Corp., 514 F.2d 690, 698 (5th Cir. 1975), cert. denied, 424 U.S. 943, 96 S. Ct. 1412, 47 L.Ed.2d 349 (1976); Klapmeier v. Telecheck Intern., Inc., 482 F.2d 247, 253 (8th Cir. 1973). See also Advisory Committee Notes to Fed. R. Evid. 702 ("[W]ithin the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or *landowners testifying to land values*.") (emphasis added).

I am not, however, prepared to make the leap from a debtor's valuation to the valuation of an internet publication or, as US Bank proposes, a tax assessor—at least not without persuasive evidence as to the reliability of these valuation references on a case by case basis.

At the hearing on the bank's motion for reconsideration the bank offered no evidence to support its assertion that the tax assessor's valuation of the Lowell property is a reliable index of its current value. Instead, the bank relied on two cases in which it said courts have accepted tax assessments as evidence of value—In re Healthco Intern., Inc., 257 B.R. 379, 382 (Bankr. D. Mass. 2001) and In re Carlucci, 2010 WL 3895500 (Bankr. D.N.H. September 28, 2010). Neither case supports the bank's argument. Healthco involved a proof of claim for sales and use taxes filed

---

be acceptable to establish lack of equity in a relief from stay context, a debtor's motion to avoid a judicial lien under Bankruptcy Code § 522(f) or to bifurcate a secured claim under Bankruptcy Code § 506 may require something more than a mere reference to the scheduled value.

in a bankruptcy case by the Massachusetts Department of Revenue to which the debtor objected. In determining which party bore the burden of proof in the claim dispute, Judge Rosenthal observed that under Massachusetts law "the validity and legality of a tax assessment are presumptively correct, and the taxpayer bears the burden of proving he is entitled to an abatement as a matter of law." Id. at 382.   The Healthco decision would be relevant to this case if the bank were seeking to introduce a real estate tax bill in order to prove the amount of outstanding real estate taxes on the Lowell property. But to argue that the property valuation underlying that tax bill is credible evidence of a property's fair market value for relief from stay purposes is to stretch the Healthco holding beyond its breaking point.

Carlucci involved a motion by the debtor to avoid a judicial lien under Bankruptcy Code § 522(f) in which the value of the real estate in question was in dispute. The debtor and the creditor whose lien the debtor sought to avoid submitted dueling appraisals of the property. In determining which appraisal was more reliable Judge Vaughn observed:

> While it is true that tax assessments may not be 100% accurate, this court believes that they provide a very reliable estimate as to the value of certain property. Mr. Underwood's appraisal seems to have taken into account the other factors that would adjust the value of the tax assessment and provide a more accurate value of the debtor's property.

Carlucci, 2010 WL 3895500 at *2.  Carlucci does not stand for the proposition that the tax assessed value of property is satisfactory evidence of its value, only that it may be incorporated as a factor to be adjusted in an appraisal. Furthermore, the fact that tax assessors' valuations in New Hampshire may be reliable estimates of value has no relevance to the reliability of such valuations in Lowell, Massachusetts.

The process of real estate property tax assessments in Massachusetts is governed by statute (see, e.g., Mass. Gen. Laws ch. 40, § 56; ch. 58, §§ 1, 1A, and 3; and ch. 59, § 38), regulation (see,

5

e.g., 830 Mass. Code Regs. § 58.3.1) and published guidelines issued by the Department of Revenue.   Under Guidelines for Development of a Minimum Reassessment Program issued by the Bureau of Local Assessment of the Massachusetts Department of Revenue, July 2008 edition, local tax assessors are required to perform annual interim valuations of property as well as more formal and extensive triennial reassessments. Neither the annual nor the triennial assessments reflect current property values, however. The guidelines establish the effective date of these valuations as follows:

> The effective date of the analysis is the January 1 prior to the fiscal year. For example, the assessment date for FY2009 is January 1, 2008, and the sales to be analyzed are those occurring in calendar year 2007 (January 1, 2007 through December 31, 2007).

Id. at § III B. 2. b.   Thus at a given moment, the assessor's valuation can be anywhere from 6 to 42 months removed from the transactions forming the basis of such valuation. This range of potential obsolescence renders tax assessors valuations in Massachusetts an unreliable index of current value.

Wholly apart from the lack of contemporaneousness of the assessor's work product, the valuation process itself cannot be objectively evaluated. While the guidelines contain recommended procedures, they appear to be aspirational only. While assessors are required to file with the annual Assessment/Classification Report a form (LA 15) certifying to the completion of annual interim assessments, the form can simply state that the assessor has concluded that no value adjustment for the year was necessary Id. at § I. While the triennial reassessments are mandatory, as noted above, by definition they do not reflect current market value. Without acceptable evidence as to the methodology and timeliness of the Lowell tax assessor's valuation of the Lowell property, that valuation cannot support US Bank's motion for relief from stay.

While the bank did not seek to establish property value by means of an internet valuation, the use of this method is on the rise. Zillow "zestimates" are gaining frequency as support for lenders' valuations in motions for relief from stay. I have denied motions relying on Zillow valuations for reasons similar to those in connection with tax assessors' valuations. More significantly, Zillow is a participatory cite almost like Wikipedia. Whereas Wikipedia allows anyone to input or change specific entries, Zillow allows homeowners to do so. A homeowner with no technical skill beyond the ability to surf the web can log in to Zillow and add or subtract data that will change the value of his property. This of course makes Zillow inherently unreliable.

As US Bank has now submitted its Drive By Property Evaluation which is a written property valuation performed by a local real estate agent opining, based on supporting facts, that the Lowell property is worth $205,000, I find that the bank has carried its burden of proving the Lowell property has no equity for the debtor or the estate and thus US Bank's motion for relief from stay will be allowed.

A separate order will issue.

Dated: November 17, 2010                                        By the Court,

                                                                _____
                                                                Melvin S. Hoffman
                                                                U.S. Bankruptcy Judge